AFFIDAVIT

I, Karl Gardner, being duly sworn, depose and say:

1. I currently serve as a Task Force Agent (TFA) with the Drug Enforcement Administration (DEA). I am currently assigned to the Burlington, VT Resident Agency. I have been a Vermont State Trooper since 2005. I have extensive experience investigating drug trafficking.

2. I have probable cause to believe that on or about September 16, 2011, William James Dunn violated 21 U.S.C. § 846, by knowingly and willfully conspiring to distribute heroin and cocaine base, controlled substances, in violation of 21 U.S.C. § 841(a).

3. The statements contained in this affidavit are based upon my investigation and include information provided by other law enforcement officials, and on my experience and training as a drug investigator. Because this affidavit is being submitted for the limited purpose of supporting a complaint and obtaining an arrest warrant, I have not included each and every fact known to me concerning this investigation.

4. In July, 2011, DEA Burlington, VT began investigating the drug trafficking activities of William James Dunn. Other law enforcement officers have told me that they have spoken with cooperating subjects, who have said that Dunn has made frequent trips from Rhode Island to Vermont with heroin to distribute in the Burlington, VT area. Two of these cooperating subjects have said that Dunn was using cellular telephone 401-743-4627.

5. On July 21, 2011, TFA Justin Couture contacted the U.S. Probation Office in Rhode Island and learned that Dunn was still on supervised release from a Federal conviction from the

1

District of Vermont. The U.S. Probation Officer provided a cellular telephone number for Dunn of 401-743-4627.

6. Soon after, TFA Justin Couture applied for and was granted a Federal Search Warrant by Magistrate Judge John M. Conroy to obtain location information relating to cellular telephone 401-743-4627. Based on the search warrant results, agents were able to determine that the phone was in fact travelling between RI and VT on a regular basis.

7. On September 8, 2011, I applied for a renewed search warrant to obtain location information for 401-743-4627. Magistrate Judge Conroy again found sufficient probable cause and signed the search warrant, allowing the use of location information to track the location of the person using 401-743-4627.

8. On September 17, 2011, at approximately 2:30 am, I noticed from the location information being provided pursuant to the search warrant, that the phone was in the Norton, Massachusetts area. Based on this information, I believed that Dunn was traveling north towards Vermont. I drove to Hooksett, New Hampshire in an attempt to locate the vehicle in which the phone was travelling. I saw a GMC Yukon travelling north on I-93. Rhode Island agents had told me that they had seen Dunn driving a Yukon in Rhode Island several days before. I ran the license plate on the Yukon, and that registration came back to Kayla Savard, who is also the subscriber on cellular phone 401-743-4627.

9. Other agents and I continued surveillance of the Yukon as it travelled north to the Burlington, VT area. During the surveillance TFA Justin Couture observed that Dunn was a passenger in the vehicle. At approximately 8:00 am, the Yukon made an abrupt stop on Beech St. in Burlington, VT. Agents approached the vehicle and took Dunn into custody.

10. The driver of the vehicle was identified as Britney Hall of Pawtucket, RI. Rhode Island agents had previously identified Hall as an associate of Dunn's.

11. Hall was advised of her Miranda rights and agreed to waive them and speak with investigators. Hall provided the following information:

   a. Hall had made multiple trips to Vermont with Dunn for the purpose of supplying heroin for distribution in the Burlington area.

   b. She had secreted a package of heroin and crack cocaine in her vagina at Dunn's direction during the trip they had just made to Vermont. The amount of drugs she and Dunn were transporting was consistent with the size of previous packages that she observed and carried.

   c. Hall believed the package contained 20 grams of heroin and "a bunch" of crack cocaine. The package of drugs was originally hidden on her person in her bra but that Dunn had instructed her to place the package in her vagina when he believed the two were being followed by police on Shelburne Rd. in Burlington.

   d. Hall had remained in Vermont during previous trips so that she could collect money for Dunn from drug customers while he returned to Rhode Island. On one occasion Hall recently traveled to Rhode Island with approximately $2,000 in drug proceeds to deliver to Dunn in Rhode Island.

12. Hall was subsequently searched by Officer Rene Berti of the Burlington, VT Police Department, at which time Hall provided Officer Berti a package wrapped in black, electrical tape and inside a condom.

13. After searching Hall, Officer Berti provided the package to TFA Justin Couture. TFA Couture and I later opened the package and found approximately 42 grams of a chunky white substance believed to be crack cocaine and approximately 25 grams of a brown powder believed to be heroin. Both substances were field tested and showed positive results for the presumptive presence of cocaine and heroin respectively. The heroin was not packaged in individual use quantities, but the crack cocaine was packaged for distribution. Based on my training and experiences, the quantities of heroin and crack were not consistent with personal use.

14. Dunn denied involvement with the package carried by Hall.

Dated at Burlington, in the District of Vermont, this 17th day of September, 2011.

Karl A. Gardner
Task Force Agent, DEA

Sworn to and subscribed before me this 17th day of September, 2011.

JOHN M. CONROY
United States Magistrate Judge